Anita Roberts, Plaintiff-Appellant, v. Harry Roberts, Defendant-Appellee.

Gen. No. 51,585.

First District, First Division.

December 18, 1967.

<br>

Kalcheim & Kalcheim, Henry A. Kalcheim, and Bernard Hammer, of Chicago, for appellant.

Robert E. Cherry, of Chicago (Joel L. Greenblatt, of counsel), for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

The parties to this cause were divorced in 1963. In 1966, the wife filed a petition for post decree relief. Of the three counts in her petition, only the third one is involved in this appeal. Count III sought a declaration from the court that certain provisions of the property settlement agreement incorporated as a part of the divorce decree are null and void. The agreement called for a lump-sum settlement in lieu of alimony, payable in weekly installments. The agreement went on to provide that payments would terminate upon death or remarriage of the wife. The argument is that such provisions are repugnant to section 18 of the Divorce Act (Ill Rev Stats 1965, c 40 § 19) and to the public policy of the State of Illinois. The court found these provisions to be valid and not void. Plaintiff was granted a rehearing on this ruling and memoranda of law were submitted to the trial court by both sides. The trial judge adhered to his original decision and this appeal follows.

Reviewing plaintiff's pleading we find that she set forth the relevant provisions of the divorce decree, section 18 of the Divorce Act, and two additional paragraphs which conclude that the parties may not contract in any way contrary to the statute and that the agreement is void insofar as it violates the statute or public

policy. Plaintiff then prays that such provisions of the agreement be declared null and void ab initio.

The pleadings contain no allegation that there is an actual controversy between the parties. There is no allegation that plaintiff is contemplating remarriage, that she is suffering from an incurable terminal disease, or any other allegation that would demonstrate a need for the declaration of rights.

 Under the declaratory judgment provisions of The Civil Practice Act (Ill Rev Stats 1965, c 110 § 57.1) declarations of rights can only be made in cases of actual controversy. Exchange Nat. Bank of Chicago v. County of Cook, 6 Ill2d 419, 129 NE2d 1 (1955). While the complaint on its face does not appear to plead an actual controversy, the Declaratory Judgment Act is to be liberally construed and not restricted by technicalities. Central Ice Cream Co. v. Universal Leaseway System, 20 Ill App2d 145, 155 NE2d 324 (1959). We believe that there is an actual controversy in the instant case. There are adverse legal interests. Although no wrong has yet been committed, such is not necessary to obtain declaratory relief. The mere existence of a claim, assertion or challenge to plaintiff's legal interests, in which the ripening seeds of litigation may be seen and which cast doubt, insecurity, and uncertainty upon plaintiff's rights or status, damages plaintiff's pecuniary or material interests and establishes a condition of justiciability. Trossman v. Trossman, 24 Ill App2d 521, 165 NE2d 368 (1960). Plaintiff in the instant cause has the right to know whether she will continue to receive the weekly payments of the lump-sum alimony and an action for declaratory judgment is proper.

Turning to the merits, the settlement agreement, which was incorporated into the divorce decree, provides as follows:

"(T)he parties hereto consider it to their best interests to settle between themselves, now and forever, the questions of alimony and support for Anita; the custody of the two minor children; the respective rights of property and dower of the parties; and any and all rights of property and otherwise, growing out of the marital or any other relationship now or previously existing between them, or which either of them now has or may hereafter have or claim to have against the other, and all rights of every kind, nature and description which either of them now has or may hereafter have or claim to have against the other, or in or to any property of the other, of every kind, nature and description, whether real, personal or mixed, now owned or which may hereafter be acquired by either of them.

"Harry (defendant-appellee) agrees to pay Anita (plaintiff-appellant), as a lump sum settlement in lieu of alimony, the sum of $———, payable in . . . equal weekly installments, . . . provided, however, (a) if the parties hereto are hereafter divorced and if Anita remarries thereafter, the obligation and requirement of Harry to make any further payments to Anita under the terms of this paragraph 2 of this Agreement for the weeks subsequent to Anita's remarriage, shall terminate absolutely; and (b) if Anita dies prior to the termination of Harry's obligation under the terms of this paragraph 2 hereof, irrespective of whether Anita shall have remarried during her lifetime, the obligation of Harry to make any payments subsequent to the death of Anita under the terms of this paragraph 2 hereof shall terminate absolutely."

The relevant portion of section 18 of the Divorce Act, (Ill Rev Stats 1965, c 40 § 19), upon which plaintiff re-

lies to sustain the assertion that the above proviso in the property settlement agreement is void, states as follows:

"A party shall not be entitled to alimony and maintenance after remarriage; but, regardless of remarriage by such party or death of either party, such party shall be entitled to receive the unpaid installments of any settlement in lieu of alimony ordered to be paid or conveyed in the decree."

No case in Illinois deals with the precise issue of the effect of a proviso in a property settlement agreement which terminates the installments of a lump-sum settlement upon the death or remarriage of the wife.* In dealing with the issues of this case, we must bear in mind that there are two distinct types of alimony, lump-sum alimony, sometimes referred to as alimony in gross, or a property settlement, and ordinary alimony or periodic alimony. Walters v. Walters, 409 Ill 298, 99 NE2d 342 (1951) ; Jacobson v. Jacobson, 50 Ill App2d 244, 200 NE 2d 379 (1964). There are many cases which turn on the question of whether the "alimony" award was gross alimony or periodic alimony. Typical of such cases are Jacobson v. Jacobson, supra; Whitney v. Whitney, 15 Ill App2d 425, 146 NE2d 800 (1958) ; Maybaum v. Maybaum, 349 Ill App 80, 110 NE2d 78 (1952) ; Stromsem v. Stromsem, 344 Ill App 530, 101 NE2d 742 (1951).

▮▮▮▮ The negotiated settlement agreement here provided for "a lump-sum settlement in lieu of alimony."

---

* In Whitney v. Whitney, 15 Ill App2d 425, 146 NE2d 800 (1957), the decree called for payment of $14,500 as a property settlement payable in monthly installments. A separate stipulation, executed by the parties, provided that the payments would terminate if the wife died and be reduced to ½ if she remarried. However, because the stipulation was not made a part of the decree, the court was forced to disregard the stipulation and only the decree was controlling.

Both parties have presented this case as one involving a property settlement (gross alimony). The court fully recognizes that the terms and labels used by the parties and incorporated in the decree are not conclusive in characterizing the alimony payment as gross or periodic. Walters v. Walters, 409 Ill 298, 99 NE2d 342 (1951). The fact that the payments provided for are payable in installments does not negate a property settlement. Walters v. Walters, 341 Ill App 561, 94 NE2d 726 (1950). Nor do we feel that the provision terminating the installment payments upon the death or remarriage of the wife change the settlement agreement to one for periodic alimony. Language to the contrary in Adler v. Adler, 373 Ill 361, 26 NE2d 504 (1940), is only in reference to the specific language of the agreement in that case. Plaintiff here has waived her right to alimony and agreed to be forever barred from the same. The intention of the parties before us, as it appears from the above quoted portions of the agreement, was not to place a dollar limit on the amount of alimony, but to enter into a property settlement in lieu of alimony as well as all other claims. In Adler, the wife had no marital property rights other than alimony. Thus the award of "alimony" was construed by the court to be periodic alimony and the case is, consequently, inapplicable here.

In a periodic alimony situation, the rule has always been that remarriage will terminate the right to receive alimony payments. Stillman v. Stillman, 99 Ill 196 (1881). This general rule was made part of section 18 of the Divorce Act in 1933, and has been uniformly applied. See Adler v. Adler, supra; Balasa v. Balasa, 11 Ill App2d 103, 136 NE2d 594 (1956); Coleman v. Coleman, 341 Ill App 462, 94 NE2d 507 (1950).

In Banck v. Banck, 322 Ill App 369, 54 NE2d 577 (1944) and Hotzfield v. Hotzfield, 336 Ill App 238, 83 NE2d 605 (1948), the courts construed settlement agreements

using the phrases "gross alimony" and "full lump-settlement of all such rights including the right to alimony," respectively, as providing for periodic alimony. The general rule of terminating alimony upon remarriage was then applied.

Even more significant is the case of Miller v. Miller, 317 Ill App 447, 46 NE2d 102 (1943), where an agreement was entered into regarding the question of alimony. The agreement provided that the monthly payments for the first three and one-half years after the divorce would not be affected or modified by the remarriage of the wife. The court refused to accept this proviso as binding upon it. The statute, which at that time only provided that a party shall not be entitled to alimony and maintenance after remarriage, "made it mandatory for the court to cancel the alimony payments after the remarriage of the plaintiff." (P 451.) The court would not be divested of its powers to modify alimony in a manner contrary to the legislative will.

However, when faced with the so-called property settlement or gross alimony situation, the courts held in an unbroken line of cases reported prior to 1944, that decrees for divorce making such awards could not be modified at a later time because of a change in circumstances. See Walters v. Walters, 341 Ill App 561, 94 NE2d 726 (1950), specially concurring opinion of Justice Niemeyer and cases cited therein; Stromsem v. Stromsem, supra. However, in Banck v. Banck, supra, a gross alimony provision, payable in installments, was construed to constitute periodic alimony and modified by the court. Hotzfield v. Hotzfield, supra, adopted the Banck decision and reached the same result. Two years after Hotzfield, the Supreme Court in Walters v. Walters, supra, held that "a lump-sum property settlement and alimony in gross" was an agreement that could not be modified in the absence of fraud or want of jurisdiction. Several of the more re-

191

cent cases adhering to this rule are: Taylor v. Taylor, 70 Ill App2d 201, 217 NE2d 89 (1966); Jacobson v. Jacobson, supra; Whitney v. Whitney, supra; Maybaum v. Maybaum, supra; Stromsem v. Stromsem, supra; Corey v. Corey, 343 Ill App 648, 99 NE2d 713 (1951).

██ ██ These basic differences between periodic and gross "alimony" must be borne in mind in examining the issues in the instant case. Plaintiff's argument is rather straightforward. In 1949, the legislature amended section 18 of the Divorce Act to remedy the result reached in Banck and Hotzfield. The amendment provided that "regardless of remarriage by such party or death of either party, such party shall be entitled to receive the unpaid installments of any settlement in lieu of alimony ordered to be paid or conveyed in the decree." This, plaintiff contends, was a declaration of public policy which cannot be countermanded by any agreement of the parties. It is further urged, that just as in Miller v. Miller, supra, where the court refused to recognize an agreement to pay periodic alimony after remarriage, so the court in the instant case should reject an agreement to terminate installments of a lump-sum settlement after death or remarriage. We do not agree with this argument.

██ Initially, we note that because the court in Miller was dealing with periodic alimony, it had continuing jurisdiction over the award. Kohl v. Kohl, 330 Ill App 284, 71 NE2d 358 (1947). Just as parties cannot invoke a court's jurisdiction by agreement, Meyer v. Meyer, 328 Ill App 408, 66 NE2d 457 (1946), they cannot divest a court of jurisdiction by agreement.

Secondly, the Banck and Hotzfield cases which led to the amendment of section 18 of the Divorce Act, were both strained interpretations of the agreements involved in those cases. These cases were perhaps best described by the Supreme Court in Walters v. Walters, supra:

"We deem it unnecessary to discuss the Hotzfield case cited, (Hotzfield v. Hotzfield, 336 Ill App 238,)

as that case follows and quotes at length and verbatim from the Banck case. The harshness of the strict application of the rules stated in the Banck case to other cases, without due consideration to the particular facts involved, no doubt led to the adoption by the legislature of the 1949 amendment, wherein, at least as to decrees entered before and modified after its adoption, this situation cannot again occur." (409 Ill at p 305.)

See also McGaughy v. McGaughy, 410 Ill 596, 102 NE2d 806 (1951), and Smith Hurd Illinois Annotated Statutes, chapter 40, § 19, Historical Note.

■■ The lump-sum settlement agreements in the Banck and Hotzfield cases did not contain any provision with respect to termination of payments upon death or remarriage. As pointed out in Walters, it was the strict application of the rule that "alimony" terminates upon remarriage without distinguishing "periodic alimony" from "gross alimony" that led to the 1949 amendment. Indeed, as Justice Dady pointed out in his dissent in Banck:

> "Undoubtedly a great many decrees have been entered in this State for gross alimony payable in instalments where payment in full has not yet been completed. If the majority ruling is the law it would also seem to follow that if the beneficiary under such a decree dies before payment is fully made then the unpaid balance will not be an asset of the estate of such beneficiary and the husband will be relieved from further payment under said section 18. I do not believe that the legislature intended any such results by the use of any of the language used in section 18. When the literal enforcement of a statute will result in great injustice and lead to consequences which the legislature could not have contemplated, the courts are bound to presume that

such consequences were not intended and adopt a construction that it may be reasonable to presume was contemplated by the legislature. (Hoyne v. Danisch, 264 Ill 467, 484.)" (322 Ill App, at p 398)

See also Rosensteil v. Rosensteil, 16 NY2d 64, 262 NYS2d 286, 209 NE2d 709 (1965).

 Thus, as we view the present section 18 of the Divorce Act, it distinguishes the distinction between the two types of alimony. While it prevents a court from terminating installments of a lump-sum settlement upon death or remarriage, it would be illogical to interpret the statute as preventing the parties from so agreeing. Section 18 was adopted to correct the unjust result of the Banck and Hotzfield cases, not to inhibit property settlements.

Parties to divorce suits have always been commended for their attempts to amicably settle their property interests. Walters v. Walters, 409 Ill 298, 99 NE2d 342 (1951). It has also been the policy of our courts to enforce such settlement agreements. In Buck v. Buck, 60 Ill 241 (1871), a husband attacked an alimony award as excessive. The Supreme Court held:

"It sufficiently appears from the recitals in the decree, that the whole question of alimony was fixed and settled by the agreement of the parties, not only the amount of money and articles of personal property allowed to the defendant in error, but also the provision made for the support and maintenance of their adopted daughter. Having consented to these provisions of the decree, the plaintiff in error can have no relief against the force of his own voluntary agreement."

In those cases which have refused to terminate installments of gross alimony upon remarriage of the wife, the

court has characterized her rights to those installments as vested and not modifiable. Walters v. Walters, supra, (Ill and Ill App); Jacobson v. Jacobson, supra. This rule is a two-edged sword. The husband in the instant case had negotiated for the vested right to terminate payment of the installments upon his wife's death or remarriage. There is no public policy which requires us to destroy his expectation. The reasoning in Stillman v. Stillman, supra, that a husband should not be obligated to support his wife's second marriage is a central issue in property settlement negotiations. To exclude this consideration would severely restrict a desirable and encouraged practice in the law of marital relations. Furthermore, a husband may be willing to agree to pay a large lump sum in installments only if such payments will terminate upon the wife's death or remarriage.

 Plaintiff in the instant case agreed to accept a stated sum from defendant as a full and final settlement of her rights to support, alimony, property, dower, and other rights growing out of the marital relationship. She further agreed that she would, in effect, accept a lesser sum if she remarried or died prior to completion of the payment schedule. We agree with plaintiff that an agreement which violates public policy will not be enforced, however, as already indicated, there is no policy, either by statute or court decision, which prevents a wife from agreeing to accept a lump-sum settlement contingent upon future events, or which prevents a husband from negotiating for the right to place such contingencies in the settlement agreement.

For the foregoing reasons, the judgment of the Circuit Court of Cook County, Divorce Division, is affirmed.

Judgment affirmed.

MURPHY, P. J. and BURMAN, J., concur.