ROHM & HAAS COMPANY *et al.*, Plaintiffs-Appellees, *v.* CONTINENTAL ASSURANCE COMPANY, Defendant-Appellee.—(ROBERT B. WILCOX, Director of the Department of Insurance, Defendant-Appellant.)

First District (3rd Division)    No. 76-1413

Opinion filed March 1, 1978.

William J. Scott, Attorney General, of Chicago (Stephen R. Swofford, Assistant Attorney General, of counsel), for appellant.

Mark Crane and Julian N. Henriques, Jr., both of Hopkins, Sutter, Mulroy, Davis & Cromartie, of Chicago, for appellee Continental Assurance Company.

Stephen C. Shamberg and Judi Fishman, both of Friedman & Koven, of Chicago, for other appellees.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Rohm & Haas Company, Warren-Teed Pharmaceuticals, Inc., Whitmoyer Laboratories, Inc., and Sauquoit Fibers Company, the plaintiff corporations, seek a declaratory judgment construing their rights under section 245.21(e) of the Illinois Insurance Code (Ill. Rev. Stat. 1975, ch. 73, par. 857.21(e)). Continental Assurance Company (Continental) and Robert B. Wilcox, the Director of the Department of Insurance of Illinois (the Director) are named as defendants. Section 245.21(e) pertains to assets held by insurance companies in "separate accounts." The plaintiffs fund their employee pension plans through such separate accounts with Continental. In a motion to dismiss, the Director opposed an interpretation of that provision by the circuit court, alleging that the complaint did not meet the requirements for a declaratory judgment as governed by section 57.1 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57.1). The court denied the motion and entered judgment on the pleadings. Continental acquiesces in the ruling; the Director appeals from the judgment.

Section 57.1(1) of the Illinois Civil Practice Act provides, in part:

"No action or proceeding is open to objection on the ground that a merely declaratory judgment, decree or order is sought thereby.

*The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments,* whether or not any consequential relief is or could be claimed, *including the determination, at the instance of anyone interested in the controversy, of the construction of any statute,* municipal ordinance, or other governmental regulation, or of any deed, will, contract or other written instrument, *and a declaration of the rights of the parties interested.* The foregoing enumeration does not exclude other cases of actual controversy. *The court shall refuse to enter a declaratory judgment,* decree or order, *if it appears that the judgment,* decree or order, *would not terminate the controversy or some part thereof,* giving rise to the proceeding." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 110, par. 57.1(1).)

Under that provision, the plaintiffs petitioned for a declaration of rights to funds held and administered by Continental in separate accounts. The status of separate accounts is defined in section 245.21(e) of the Insurance Code:

"Amounts allocated to a separate account under this Article are owned by the company, and the company may not be, nor hold itself to be, a trustee with respect to such amounts. The assets of any such separate account equal to the reserves and other contract liabilities with respect to such account may not be charged with liabilities arising out of any other business the company may conduct." Ill. Rev. Stat. 1975, ch. 73, par. 857.21(e).

Both Continental and the plaintiffs believe this provision operates to insulate assets in separate accounts from unrelated liabilities of the insurance company; a clause in a contract between them reflects this understanding:

"The assets of these separate accounts shall be owned by [Continental] as a part of its non-participating business and [Continental] shall not be, or hold itself out to be, a trustee with respect to such assets. However, the assets shall not be chargeable with liabilities arising out of any other business of [Continental]."

According to the plaintiffs, in the event of Continental's insolvency and liquidation, the statute immunizes their funds from distribution by a liquidator to general creditors of the insurance company; by law the liquidator is the Director of the Department of Insurance (Ill. Rev. Stat. 1975, ch. 73, par. 805).

Forty-four States and the District of Columbia have enacted laws similar to section 245.21(e). However, in States other than Illinois, an intermingling of separate account assets with other assets for liability purposes is apparently forbidden by statutory language which declares

that divergent liabilities "shall not" be charged out of the separate accounts. Only Illinois varies this wording, employing "may not" in place of "shall not." Originally the Illinois statute was numbered 245.54 in the Insurance Code and read "* * * such separate account *shall not* be chargeable with liabilities arising out of any other business the company may conduct" (emphasis added) (Ill. Rev. Stat. 1967, ch. 73, par. 857.54). In 1971 all sections relating to separate accounts were reorganized within the Insurance Code to article XIV 1/2; the particular section was renumbered 245.21(e) and reworded to read "* * * such account *may not* be charged with liabilities arising out of any other business the company may conduct." (Emphasis added.) Ill. Rev. Stat. 1971, ch. 73, par. 857.21(e).

The plaintiffs claim that the wording shift from "shall not" to "may not" does not affect the intent of the law to protect separate account assets from unrelated liabilities. However, they argue the change may encourage the Director to assume discretionary powers in relation to the separate accounts, inviting him in a liquidation to claim separate account assets for distribution to general creditors. At best, the plaintiffs allege, the phrase "may not" harbors an ambiguity which does not foreclose the Director from an attempt to obtain the pension monies. The present language no longer provides the intended mandatory exemption for separate accounts in the liquidation scheme. The possibility of such action by the Director, the plaintiffs contend, severely threatens the stability of the pension plans they maintain through the separate accounts with Continental. At the end of 1975 the plaintiffs had in excess of $20 million in separate accounts with Continental; in all, Continental holds over $220 million in assets in such accounts.

The plaintiffs sought a declaration by the circuit court that section 245.21(e) prohibits the Director from charging separate account assets with liabilities arising out of unconnected business, in the event of liquidation. Continental agrees with the plaintiffs and urged the court to so hold. The Director asserted he would not take any official position concerning section 245.21(e) in order to preserve his discretion at the time of liquidation. He filed a motion to dismiss the complaint. The motion was denied; the court, on the pleadings, ruled in favor of the plaintiff and Continental. The Director appeals the judgment.

The Director argues that declaratory relief in the form of a judicial construction of rights under section 245.21(e) is inappropriate because the case does not present an "actual controversy" as required by section 57.1 of the Civil Practice Act. First, he asserts, his position is not adverse to that of the plaintiffs. He claims he has never admitted to any definitive meaning of section 245.21(e); he neither endorses nor opposes the plaintiffs' interpretation that in the event of insolvency separate account

assets are not reachable by a liquidator for the benefit of general creditors. He states his refusal to issue an opinion on the section does not, in itself, place the Director in conflict with the plaintiff. Since his posture does not presently controvert the plaintiffs' claims in the case, there is no cognizable controversy. Mere curiosity as to the meaning of the section does not amount to a controversy. The right asserted by one party, the Director contends, must be denied by the other.

Second, he claims the plaintiffs' uncertainty is too remote in time from any real jeopardy to the separate account funds. If a conflict erupts, it will occur at the time of liquidation; presently, since the plaintiffs allege neither the pending insolvency of Continental nor a threat to claim the funds, such conflict is supposition. The case lacks the minimum degree of immediacy required by the declaratory judgment provision; any judgment, the Director asserts, would be an advisory opinion by the court.

■■ A controversy cognizable under section 57.1 depends upon the existence of opposing legal interests. These interests must be generated not by curiosity about or a concern for the outcome of the controversy but a "personal claim, status, or right which is capable of being affected" by a decision ending the dispute. (*Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 376, 362 N.E.2d 298, 301.) As held in *Underground Contractors Association* the sincerity and vigor of a party's position are not the criteria with which to determine the presence of an adverse interest and hence a controversy. What is recognized as relevant is not the interest a party assumes in his pleadings but rather his interest as defined by the law. We find, after analyzing the legal relationships of the parties, that the interests presented are real and sufficiently adverse creating a controversy susceptible to a resolution by a declaratory judgment under section 57.1.

■■ The Insurance Code in section 193 (Ill. Rev. Stat. 1975, ch. 73, par. 805) makes the Director the liquidator of an insolvent insurance company with the duty to distribute to all creditors, in pro rata shares, the assets of the defunct company. (*Washington v. Merit Mutual Insurance Co.* (1972), 5 Ill. App. 3d 742, 284 N.E.2d 304.) This responsibility creates in a liquidator, an interest which resists the isolation of some assets for the benefit of a few. A judgment declaring rights in regard to the status of assets of an insurance company touches the legal interests of the Director. This interest places him in a position to contest the plaintiffs' assertions of immunity. The Director's refusal to formally contradict the plaintiff does not negate the role of the liquidator as defined by statute. Silence alone should not defeat a proper declaration of rights. (See E. Borchard, Declaratory Judgments 48 (2d ed. 1941).) Indeed, his reason for delaying an official position as to the meaning of section 245.21(e)—the need to

preserve his discretionary powers as liquidator—indicates an understanding of this statutory interest. When cognizable interests are present, even if the pleadings lack allegations of actual controversy, a declaratory judgment can be appropriate. *Roberts v. Roberts* (1967), 90 Ill. App. 2d 184, 234 N.E.2d 372.

Section 57.1 also requires that the controversy created by the opposing legal interests be real and not premature. The jurisdiction of a court is dependent on actuality, the existence of a concrete problem. However, caution must be exercised to avoid reading this requirement too stringently thus defeating the purpose of the declaratory judgment remedy by excluding authentic, but incipient controversies from a court's calendar. A declaratory judgment is a means to end a dispute "before the status quo has been altered or disturbed by physical acts of either party," before "it has accumulated the asperity, distemper, animosity, passion, and violence of the full-blown battle which looms ahead." (E. Borchard, Declaratory Judgments 57 (2d ed. 1941).) The general purpose of the declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relationship either as to present or prospective obligations. The Historical and Practice Notes following section 57.1 note that the remedy:

"\* \* \* is designed to afford security and relief against uncertainty with a view to avoiding litigation, rather than in aid of it, and to settle and fix rights before there has been an irrevocable change of position of the parties in disregard of their respective claims of right, and thus promote peace, quiet and justice, with the end always constantly in view that one of the chief purposes is to declare rights rather than to execute them. [Citations.] \* \* \* [T]he remedy is one to be employed in the interests of preventative justice and its scope should be kept wide and liberal, and not restricted by technicalities." Ill. Rev. Stat. Ann., ch. 110, par. 57.1, Historical and Practice Notes, at 128-29 (Smith-Hurd 1973).

■■ Of course a declaratory judgment is not appropriate where the rights of the parties are not subject to accurate determinations (*Howlett v. Scott* (1977), 69 Ill. 2d 135, 143, 370 N.E.2d 1036, 1039); in the present circumstance conjecture is at a minimum. The ambiguity built into the wording change in section 245.21(e) from the mandatory "shall not" to the seemingly more permissive "may not" coupled with the Director's statements relating to his claimed discretion in regard to assets properly in separate accounts places something akin to a cloud on the title to the funds held by Continental in separate accounts, threatening the plaintiffs' pension plans. Such a concrete apprehension is expediently and properly dealt with through declaratory judgment. This was acknowledged in *Roberts v. Roberts*:

"Although no wrong has yet been committed, such is not necessary to obtain declaratory relief. The mere existence of a claim, assertion or challenge to plaintiff's legal interests, in which the ripening seeds of litigation may be seen and which cast doubt, insecurity, and uncertainty upon plaintiff's rights or status, damages plaintiff's pecuniary or material interests and establishes a condition of justiciability. Trossman v. Trossman, 24 Ill. App. 2d 521, 165 N.E.2d 368 (1960)." 90 Ill. App. 2d 184, 187, 234 N.E.2d 372, 374.

In that case a provision in a divorce settlement agreement which became effective upon the remarriage or death of the plaintiff was questioned as against public policy. In the complaint the plaintiff alleged neither terminal illness nor remarriage. Nevertheless, the court found adjudication of rights under the settlement an appropriate subject for a declaratory judgment. Similar constructions were placed on the requirement that there be an actual controversy in *Peifer v. Board of Trustees* (1976), 35 Ill. App. 3d 383, 342 N.E.2d 131, and *People ex rel. Anastasia v. Civil Service Com.* (1973), 10 Ill. App. 3d 583, 295 N.E.2d 127, where courts held that actions for declaratory judgment would lie to construe pension plans prior to the time employees elected to retire, and in *Elward v. Peabody Coal Co.* (1956), 9 Ill. App. 2d 234, 132 N.E.2d 549, where the court held that an action for declaratory judgment would lie to construe the terms of a stock purchase option prior to any exercise of that option. The controversy in this case is real and not premature.

The Director next argues that section 57.1 forbids a declaration of rights because entry of a judgment in this matter "would not terminate the controversy or some part thereof, giving rise to the proceeding" (Ill. Rev. Stat. 1975, ch. 110, par. 57.1). He suggests that if a controversy does exist the real adverse party is not the Director, who in his role as a liquidator is a mere conduit for distribution of assets, but the creditors of Continental, who should benefit from the distribution. It is their interests which would be affected if separate accounts were held to be permanently isolated from an insurance company's assets. Since no creditor is presently a party, no creditor could be bound by any judgment in this case. The Director contends that because a creditor has the right to intervene and assert this interest in liquidation proceedings the existence of these unrepresented rights forecloses any termination of the controversy at this time.

The interests of creditors of an insurance company do not become fixed until liquidation occurs (Ill. Rev. Stat. 1975, ch. 73, par. 806); before then, there are no actual interests in the assets of the company. In *Oglesby v. Springfield Marine Bank* (1944), 385 Ill. 414, 422, 52 N.E.2d 1000, 1004, necessary parties were defined as "persons who are legally or equitably

interested in the subject matter and the result of the suit. * * * The interest however, must be a present substantial interest as distinguished from a mere expectancy or future contingent interest." Unlike Continental which holds and administers the separate accounts, unlike the plaintiffs who placed the funds with Continental and have contractual rights to them, and unlike the Director who has a definite and identifiable statutory role, a creditor is, at present, a theoretical entity. As held in *American Home Assurance Co. v. Northwest Industries, Inc.* (1977), 50 Ill. App. 3d 807, 812-13, 365 N.E.2d 956, 961:

> "Courts of review place special emphasis on the requirement of joinder of all necessary parties to avoid constitutional infringements, but they do not automatically conclude that any individual or entity claiming an interest in the controversy is necessary for its equitable determination. (*Stavros v. Karkomi* (1976), 39 Ill. App. 3d 113, 349 N.E.2d 599.) The quality of the interest of an absent party is to be determined from the issues of the case as formulated by the pleadings and the evidence before the court. (*McDonald's Corp. v. Smargon* (1975), 31 Ill. App. 3d 493, 334 N.E.2d 385.)"

Here we are faced with an unknown creditor with an unknown interest in a specific and actual fund. A declaration of static and present rights to the fund could not affect hypothetical participants who at present cannot be ascertained. Further, the issue in this case depends on legislative intent and statutory construction, not on future events. Because there is a right to intervene by a creditor when his interest is fixed in a proceeding concerned with distribution of general assets of an insolvent company does not mean a creditor is a necessary party when both the creditor and the creditor's claim are academic. We believe the dispute as to whether funds properly maintained in separate accounts are subject to liquidation claims from unrelated business will be terminated upon a judgment in this case.

■■ We also concur in the circuit court's declaration of rights under section 245.21(e). First, we find that the section constitutes a mandatory prohibition against charging assets of a properly maintained separate account equal to the reserves and other contract liabilities with respect to such account with any liability arising out of any other business that Continental may conduct. Second, we hold that the funds deposited by the plaintiff with Continental in separate accounts which are properly maintained and administered by Continental are not chargeable with liabilities arising out of any other business Continental may conduct to the extent that the assets of such accounts are equal to the reserves and other contract liabilities with respect to such accounts.

The language of section 245.21(e) was reworded in 1971 from dictating

that unrelated liabilities "shall not be charged" against separate accounts to "may not be charged" against the accounts. No clarification of any sort followed this interchange of predicates to indicate whether the alteration meant a change in the tenor of the statute from a mandatory one to a directory one. The word "may" has a permissive connotation which might be a signal to the Director that in certain circumstances separate account assets are available for distribution to general creditors at liquidation. Several things mitigate against this interpretation.

■■ Section 245.21(e) is couched in negative terms: separate accounts "may not" be charged with unrelated liabilities. As held in *Lincoln Park Realty v. Commission on Human Relations* (1973), "negative, prohibitory, or exclusive words are generally construed as mandatory when employed in statutory provisions." (9 Ill. App. 3d 186, 189, 292 N.E.2d 116, 118; see also 2A Sutherland, Statutes and Statutory Construction §57.09 (4th ed. 1973).) The section is not a positive grant of power permitting discretionary acts, but a mandatory limitation on the general authority to charge liabilities against the assets of a company.

The words "may" and "shall" in statutes have never been read with inflexible or fixed definitions; they have, in fact, been used interchangeably depending on legislative intent. (*Andrews v. Foxworthy* (1977), 71 Ill. 2d 13, 373 N.E.2d 1332; *People v. Elgin Home Protective Association* (1935), 359 Ill. 379, 194 N.E. 584.) An interpretation of a provision cannot derive from a word by word analysis; "it must be grounded on the 'nature, objects and the consequences which would result from construing it one way or another.' *Carrigan v. Illinois Liquor Control Com.* (1960), 19 Ill. 2d 230, 233." *Foxworthy* (1977), 71 Ill. 2d 13, 373 N.E.2d 1332. Article XIV 1/2 of the Insurance Code was written to govern separate account assets and, with some detail, it codifies the rights and duties that arise in connection with them. Section 245.21(e) of that article declares a legislative intent that assets in separate accounts may not be charged with unrelated liabilities. It goes no further; there is no suggestion, anywhere, as to the type of situation which would permit an exception to that prohibition. The absence of legislative instruction in section 245.21(e) admits an intent to forbid the invasion of separate accounts by a liquidator for the benefit of general creditors. In this context, the words "may not" have the effect of "must not." The judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.