RAYMOND DAYAN, Indiv. and as Representative for Raybill Associates, Plaintiffs and Respondents-Appellants, v. McDONALD'S CORPORATION, Defendant and Petitioner-Appellee.

First District (1st Division)   No. 84—2788

Opinion filed November 12, 1985.

Epton, Mullin & Druth, Ltd., of Chicago (Saul A. Epton and Gerald B. Mullin, of counsel), for appellants.

Foran, Wiss & Schultz, of Chicago (Thomas A. Foran, Richard G. Schultz, and James R. Figliulo, of counsel), for appellee.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises out of a petition brought by McDonald's Corporation (McDonald's) seeking a declaration that Illinois law governs the validity and performance of provisions in a contract with plaintiff Raymond Dayan concerning certain percentage fee payments made by Dayan to McDonald's, and that such payments were valid and enforceable under Illinois law. The trial court granted summary judgment for McDonald's, holding as a matter of law that Illinois law governs the percentage fee payment provisions in the contract and validates the payments made. Dayan appeals. For the following reasons, we affirm.

Issues relating to the present dispute have been litigated by the parties for the past 15 years and have been the subject of four prior opinions by this court. (*Dayan v. McDonald's Corp.* (1984), 126 Ill. App. 3d 11, 466 N.E.2d 945; *Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 466 N.E.2d 958; *Dayan v. McDonald's Corp.* (1979), 78 Ill. App. 3d 194, 397 N.E.2d 101; *Dayan v. McDonald's Corp.* (1978), 64 Ill. App. 3d 984, 382 N.E.2d 55.) Some background about the litigious relationship of the parties will be helpful to understanding the present controversy.

In 1970, Dayan commenced an action in the circuit court of Cook County, alleging that McDonald's had breached a prior agreement giving Dayan the right to purchase certain franchises and the right to develop and operate certain restaurants in Paris, France. In 1971, pursuant to a consent decree, the parties entered into a master license agreement (MLA) under which Dayan obtained an exclusive license to operate McDonald's restaurants in Paris. McDonald's was obligated under the MLA to develop and construct a certain number of restaurants, subject to various conditions, and to lease those restaurants to Dayan. In turn, Dayan was obligated to pay McDonald's a base rent plus a percentage of his gross sales from such leased restaurants. The MLA provided that the courts of France and Illinois were to have concurrent jurisdiction over all controversies. The consent decree stated that the trial court retained jurisdiction to enforce compliance with the terms of the MLA.

In 1972, pursuant to a second consent decree, the parties amended the MLA (first supplement). The first supplement stated that "[t]he [MLA] remains in full force and effect in accordance with its terms except as herein supplemented." This second consent decree provided that the trial court retained jurisdiction to enforce compliance with the terms of the MLA, as supplemented.

In 1973, in settlement of a controversy concerning obligations under the lease payment provisions of the MLA, the parties amended the MLA and the first supplement by entering into a second supplement to the MLA pursuant to another consent decree. The second supplement terminated McDonald's obligations to purchase or lease real estate; instead, McDonald's agreed to provide, or cause to be provided, financing for the acquisition and construction of certain restaurants by Dayan. Dayan, in turn, agreed to repay McDonald's the principal amount advanced, amortized over a term of 15 years, plus interest or charges incurred by McDonald's to carry the loan for that period. Additionally, in lieu of rental payments McDonald's was to receive a specified percentage "financing fee" (percentage fee) based on the gross sales of restaurants.

In accordance with the second supplement, McDonald's and the French corporations embarked upon the financing relationship, and funds were advanced by McDonald's French subsidiary, McDonald's France S.A.R.L., to the French corporations organized by Dayan. From 1973 through 1982, the French corporations made the applicable percentage fee payments. However, litigation ensued with respect to the termination of Dayan's French franchise and, after an extensive trial, the circuit court of Cook County entered an order in September 1982 terminating the franchise. This order was affirmed on appeal. *Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 466 N.E.2d 958.

In December 1983, Dayan caused his French companies to file suit in France against McDonald's French company, seeking a judgment that the percentage fee payments under the MLA, as supplemented, were usurious under French law, that McDonald's be ordered to return such payments, and that any obligation to substitute another form of payment be declared null and void.

Consequently, in February 1984, McDonald's filed a petition for declaratory judgment and other relief in the circuit court of Cook County. McDonald's sought a declaration that Illinois law governs the method and performance of percentage fee payments and that such payments were valid and enforceable under Illinois law. Dayan moved for a change of venue which was denied by the trial court. Dayan additionally filed motions to dismiss the action under the doctrines of *forum non convenience* and prematurity. These motions were also denied. On October 19, 1984, the trial court granted summary judgment for McDonald's on its declaratory judgment petition, and this appeal followed.

On appeal, Dayan argues: (1) the trial court erred in denying his

motion for a change of venue; (2) the parties intended French law to govern the validity and performance of the percentage fee payments; (3) the trial court erroneously denied his motion to dismiss for *forum non conveniens*; and (4) the trial court erred in not dismissing McDonald's petition as premature.

I

■ We first address Dayan's argument that the court erred in denying his motion for a change of venue filed pursuant to section 2—1001 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1001). This section allows a motion where any party or his attorney fears he will not receive a fair trial because the judge is prejudiced against him or his attorney. The right to a change of venue on account of prejudice of the trial judge is absolute where the motion is filed before the judge has ruled on any substantive issue in the case. (*Perimeter Exhibits, Ltd. v. Glenbard Molded Binder, Inc.* (1984), 122 Ill. App. 3d 504, 461 N.E.2d 44.) However, if after the trial judge has ruled on a substantive issue, a party has a legitimate reason to believe the judge is prejudiced, he may still petition for a change of venue. He must set forth in his petition specific allegations to support his charge of prejudice, and the petition will be granted only in the sound discretion of the trial court. *Yaw v. Beeghly* (1982), 109 Ill. App. 3d 627, 440 N.E.2d 1066.

In the present case, Dayan contends he had an automatic and absolute right to a change of venue because his motion was timely filed before the judge ruled on any matters contained in McDonald's petition for declaratory judgment. McDonald's replies that the present dispute is merely a continuation of the same equitable proceedings which have ensued for the past several years concerning the MLA and its supplements. McDonald's contends that since the same judge from which a change of venue is sought has made substantive rulings in the earlier proceedings, the denial of Dayan's motion to change venue was proper.

We agree with McDonald's and find that *In re Marriage of Kozloff* (1984), 101 Ill. 2d 526, 463 N.E.2d 719, offers a persuasive analogy to the present case. There, in affirming the denial of a change of venue petition, our supreme court rejected the proposition that a petition to modify a dissolution of marriage decree constitutes a new action. Rather, the court held that post-decree petitions are merely continuations of the dissolution proceeding, and a substantive ruling on one petition will preclude a change of venue as of right on another. The court stated:

"*** This court has long condemned a litigant's attempt to seek a change of venue after he has formed an opinion, based upon the court's adverse rulings, that the judge may be unfavorably disposed towards his cause. [Citations.] *** Obviously, such maneuvering is anathematical to the efficient use of judicial resources. [Citations.] Accordingly, we hold that post-decree petitions do not constitute new actions, but merely continuations of the dissolution proceeding, and a substantive ruling on one petition will preclude a change of venue as of right on another. ***.

It follows that a judge's substantive ruling during the dissolution proceeding will preclude a change of venue as of right on a post-decree petition before that same judge." (101 Ill. 2d 526, 530-32, 463 N.E.2d 719.)

*Kozloff* was followed by this court in *In re Marriage of Hilkovitch* (1984), 124 Ill. App. 3d 401, 464 N.E.2d 795.

■ We believe that *Kozloff* is directly analogous to the facts and circumstances now before us. All of the litigation between Dayan and McDonald's in the chancery division, including the present action, has arisen out of the MLA, as supplemented. The MLA was the subject of a consent decree in which the court specifically retained jurisdiction to enforce the MLA and to resolve any disputes arising in connection with it. Each of the two supplements to the MLA were also products of consent decrees which provided that the court retained jurisdiction to enforce the MLA and resolve disputes arising under the agreement. Both Dayan and McDonald's have filed claims in the same chancery proceeding under the same docket number during the past 15 years seeking the circuit court's assistance in resolving disputes pertaining to the MLA, as supplemented. Under these circumstances, the present action was not a new proceeding, but merely a continuation of the prior proceedings in which the same judge from whom a change of venue is being sought had made substantive rulings. As a result, Dayan's motion to change venue was not timely filed, thereby precluding an automatic right to change venue.

We note that Dayan, in arguing that his motion was timely filed, relies solely on *Rosenblum v. Murphy* (1976), 42 Ill. App. 3d 1029, 356 N.E.2d 888, and *Smith v. Smith* (1967), 87 Ill. App. 2d 21, 230 N.E.2d 474, which held that post-decree petitions to modify divorce decrees were new proceedings giving a party the automatic right to change venue. However, as this court observed in *In re Marriage of Hilkovitch* (1984), 124 Ill. App. 3d 401, 464 N.E.2d 795, the position in *Rosenblum* and *Smith* was later rejected by our supreme court in *Kozloff.*

■ Dayan alternatively argues that even if he had no automatic right to change venue, his motion should have been granted on the basis of "fear of prejudice." We do not agree. It is held that the burden of proving prejudice so as to justify a change of venue is a heavy one; there must be specific allegations of actual prejudice and the conclusion of prejudice cannot be lightly made. (*People v. Vance* (1979), 76 Ill. 2d 171, 390 N.E.2d 867.) As our supreme court observed in *Vance*,

> "The appellate court has repeatedly indicated that the burden of establishing actual prejudice rests on the defendant, and the trial court need not justify retaining the case, [citation], and this court has said that the trial judge is ordinarily in the best position to determine whether he has been prejudiced [citations]. ***.

> To conclude that a judge is disqualified because of prejudice is not, of course, a judgment to be lightly made. It will be viewed by some as reflecting unfavorably upon the judge, and it tends to disrupt the orderly functioning of the judicial system." 76 Ill. 2d 171, 178-79, 390 N.E.2d 867.

■ Here, the only grounds alleged by Dayan in his motion to support his fear of prejudice are the judge's prior adverse rulings on other disputes between Dayan and McDonald's concerning the MLA, as supplemented, and his finding that Dayan had been guilty of gross misconduct and bad faith pleading. At no time during the oral argument of the venue motion did Dayan's counsel argue that the judge was actually prejudiced. Rather, his only allegation was a "fear of prejudice" and "fear of bias." At the hearing, counsel for Dayan even stated, "I have no idea, and I don't believe the court has any idea, as to what its feeling is as to the matters that have been presented." Dayan's motion and argument were devoid of any specific allegations that demonstrated prejudice or bias on the part of the trial judge.

We note that prior adverse rulings by a judge against a party are insufficient to constitute sufficient grounds to require a change of venue. Courts have not permitted a change of venue on the basis of prejudice even where the trial judge had previously found the movant guilty of a crime and sentenced him to prison. *People v. Taylor* (1984), 101 Ill. 2d 508, 463 N.E.2d 705, *cert. denied* (1984), 469 U.S. 866, 83 L. Ed. 2d 140, 105 S. Ct. 209; *People v. Vance* (1979), 76 Ill. 2d 171, 390 N.E.2d 867.

We cannot conclude that the trial court abused its discretion in denying Dayan's motion to change venue on the basis of prejudice. The court's denial of the motion is therefore affirmed.

## II

■ Dayan next argues that the trial court erred in granting Mc-Donald's motion for summary judgment on McDonald's petition for declaratory judgment and other relief. The court declared that as a matter of law the MLA, as supplemented, is to be construed in accordance with and its performance governed by Illinois law, and that the percentage fee payments made by Dayan were lawful and valid. Dayan argues that summary judgment should not have been granted because the MLA, as supplemented, unambiguously expressed the parties' intent that French law, not Illinois law, would govern their rights and obligations relating to the percentage fee payments. Alternatively, Dayan argues that the MLA, as supplemented, is ambiguous as to the parties' choice of law. We find no merit to Dayan's arguments.

It is a fundamental principle that in construing contracts the primary objective is to determine and give effect to the intentions of the parties. (*AZL Resources, Inc. v. Bromagen* (1979), 79 Ill. App. 3d 76, 398 N.E.2d 292.) The most reliable indicator of the parties' intent can be found in the language used in their contract. (*Thread & Gage Co. v. Kucinski* (1983), 116 Ill. App. 3d 178, 451 N.E.2d 1292.) Courts may not rewrite a contract to suit one of the parties, but must enforce the terms as written. *Schroud v. Van C. Argiris & Co.* (1979), 78 Ill. App. 3d 1092, 398 N.E.2d 103.

Here, the original MLA was entered into in May 1971 pursuant to a consent decree which provided that the court was to retain jurisdiction to enforce compliance with its terms. Section 26.5 of the MLA specifically provided that Illinois law shall govern the rights and obligations under the MLA. This section states, in relevant part, as follows:

> "Governing Law. This agreement shall be construed in accordance with, and its performance shall be governed by, the law in force in the State of Illinois, U.S.A."

In 1972, pursuant to a second consent decree, the MLA was amended by the first supplement. The first supplement did not change or modify the governing law provision of the MLA and specifically concluded that "[t]he [MLA] remains in full force and effect in accordance with its terms except as herein supplemented."

In 1973, the parties again amended the MLA by entering into a second supplement. The second supplement specifically enumerated each of the sections in the original MLA which were amended by that supplement. The governing law provision of the MLA, section 26.5, was *not* identified as a section which was amended by the second sup-

plement. Except for those specifically enumerated changes, the second supplement expressly provided that the MLA would "remain in full force and effect."

Dayan does not dispute that the provisions of the original MLA are governed by Illinois law. Rather, he argues that the second supplement amended the governing law provision of the MLA, section 26.5, to provide that French law would govern. In support of his argument, he focuses exclusively on the language of certain clauses and sentences in paragraphs 13 and 14 of the second supplement. He urges first that paragraph 13 of the second supplement "clearly evinces the parties' intent to apply French law to the Percentage Fee arrangement." However, paragraph 13 does not even pertain to the percentage fee payments. Instead, one of the two clauses of that paragraph quoted by Dayan merely sets out Dayan's obligations to repay McDonald's the loans that were to be made to him for the acquisition and construction of restaurants in France. The other clause of paragraph 13 that Dayan relies on states only that the loan documentation would contain such terms and conditions as would be expected in similar documentation in France.

Dayan has failed to explain how the two clauses of paragraph 13 had any amendatory effect on section 26.5 of the MLA. Dayan has merely underscored the use of the word "France" in paragraph 13, and then attempts to argue that such a reference connotes a complete revision in the parties' agreed choice of governing law. However, paragraph 13 evinces no intent to amend the governing law provision of the MLA.

Dayan also relies on paragraph 14. He states that paragraph 14 provides that payment of a percentage fee "is to be measured and paid in French francs." Such a statement is inaccurate. Dayan's quotation from paragraph 14 omits a number of sentences, including the sentence which provides that "[t]he [percentage] fees payable pursuant to this paragraph shall be due and paid on the same date and in the same manner as royalties pursuant to Article 3." Article 3 of the MLA permits payments to be made in U.S. dollars, French francs or other currency as designated by McDonald's. Hence, the method and manner of payment of the percentage fee are controlled by the provisions of the original MLA which, as Dayan does not dispute, are governed by Illinois law. As such, this provision in paragraph 14 only serves to reinforce the conclusion that the MLA's governing law provision, section 26.5, was to remain in effect and was not amended by the second supplement.

Dayan further contends that the second to the last sentence of

paragraph 14 shows the intent of the parties to amend the governing law provision of the MLA. That sentence provides that, in the event the percentage fee payments were contrary to the law or public policy of France "or any other jurisdiction," Dayan would substitute another permissible form of payment giving McDonald's the same economic interest. The next sentence, which Dayan does not emphasize, provides that the percentage fee "shall be due and payable regardless of whether deductible by the payor for tax purposes." It is clear that these two sentences serve only to emphasize the parties' intent that Dayan would be obligated to pay the percentage fee even if he was unable to deduct the payments, or even if the form or method of such payments presented problems with the laws of France or any other jurisdiction. These sentences reaffirm the parties' intent that their obligation was to be binding under any possible scenario.

If the parties had intended that paragraphs 13, 14 or any other part of the second supplement were to amend the governing law provision of section 26.5 of the MLA, they could have identified section 26.5 as one of the provisions that were to be amended as they did with each of the other sections which were amended by the second supplement. The second supplement does not include in its enumeration of the amended provisions the MLA's governing law provision, and instead specifically states:

"Except as herein supplemented and amended, the Agreement [MLA] shall remain in full force and effect."

In view of the express language of the MLA, as supplemented, Dayan's arguments challenging the granting of summary judgment are unpersuasive. Summary judgment should be granted where the pleadings, exhibits, depositions, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005.) Although summary judgment is a drastic remedy to be used with caution, its use is to be encouraged in the proper case. (*Continental Casualty Co. v. Polk Brothers* (1983), 120 Ill. App. 3d 395, 457 N.E.2d 1271.) We find that the trial court properly granted summary judgment where the terms of the MLA, as supplemented, clearly establish that no triable issue of fact existed as to whether the parties intended Illinois law to govern the percentage fee payments.

### III

We next turn to Dayan's argument that the trial court erred in denying his motion to dismiss on grounds of *forum non conveniens.*

Dayan contends that France, rather than Illinois, is the proper forum in which to litigate this dispute.

■ *Forum non conveniens* is a doctrine founded in consideration of fundamental fairness and sensible and effective judicial administration. (*Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 514, 301 N.E.2d 729.) In applying the doctrine, the inquiry focuses upon the relative convenience and fairness of the forums having jurisdiction over the defendant. (*Foster v. Chicago & North Western Transportation Co.* (1984), 102 Ill. 2d 378, 382, 466 N.E.2d 198.) The trial court has broad discretion in deciding whether a case should be dismissed based upon *forum non conveniens*; the court's decision will be set aside only if this court finds an abuse of discretion. *Moore v. Chicago & North Western Transportation Co.* (1983), 99 Ill. 2d 73, 77, 457 N.E.2d 417.

Here, Dayan argues that Illinois is an inconvenient and inappropriate forum to resolve disputes concerning the MLA, as supplemented. His argument is predicated primarily on the assumption that the percentage fee obligation is to be construed in accordance with, and its performance governed by, the laws of France. As already established above, this assumption is unwarranted and erroneous; Illinois, rather than French, law governs.

Moreover, any argument that Illinois is an inappropriate forum is unpersuasive in light of the history of this litigation. Illinois courts, both at the trial and appellate levels, have devoted a great deal of time and energy to the litigation of claims concerning the enforcement of the MLA, as supplemented. As the trial court observed, "[t]he history of this agreement is a history couched totally in Illinois. *** Illinois courts have maintained continuing custody on the matter for thirteen and a half or fourteen years."

We believe that, contrary to Dayan's assertion, factors of convenience and fairness strongly favor litigation of this case in Illinois. Dayan is a citizen of Illinois; McDonald's has its principal place of business in Illinois; the MLA and each of its supplements were executed in Illinois; the MLA and its supplements were the subject of consent decrees entered by Illinois courts, which decrees expressly retained jurisdiction to determine any disputes in connection with the MLA or its supplements; and the MLA, as supplemented, was by its terms, to be construed in accordance with and its performance governed by Illinois law.

Briefly, we observe that ironically the issue of *forum non conveniens* has previously been litigated in this case with the parties on opposite sides than they now find themselves. In 1978, McDonald's

sought to have a petition relating to the termination of the MLA dismissed on grounds of *forum non conveniens*. Dayan vigorously opposed that motion and persuaded the court that Illinois was the most appropriate and convenient forum. See *Dayan v. McDonald's Corp.* (1979), 78 Ill. App. 3d 194, 397 N.E.2d 101.

■ We conclude, for the reasons set forth above, that the trial court did not abuse its discretion in denying Dayan's *forum non conveniens* motion.

### IV

■ Finally, Dayan contends that the trial court erred in denying his motion to dismiss McDonald's petition for declaratory judgment on the ground of prematurity. He argues that the petition was premature because no actual controversy existed.

Section 2—701 of the Code of Civil Procedure permits declaratory judgments to be rendered in instances where an "actual controversy" exists. (Ill. Rev. Stat. 1983, ch. 110, par. 2—701.) Our supreme court discussed the requirement of an actual controversy in *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 389 N.E.2d 529. There, the court stated:

> " '*** "Actual" in this context does not mean that a wrong must have been committed and injury inflicted.' " 75 Ill. 2d 443, 450, 389 N.E.2d 529.

> "The 'actual controversy' requirement is meant merely to distinguish justiciable issues from abstract or hypothetical disputes and is not intended to prevent resolution of concrete disputes admitting of a definitive and immediate determination of the rights of the parties. [Citation.] The declaratory judgment remedy should be liberally applied and not restricted by unduly technical interpretations. ***." (75 Ill. 2d 443, 452, 389 N.E.2d 529.)

The "actual controversy" requirement was also discussed in *Roberts v. Roberts* (1967), 90 Ill. App. 2d 184, 234 N.E.2d 372, where the plaintiff sought a declaration that certain provisions of a post-divorce property settlement agreement were null and void. In holding that an actual controversy existed, this court stated:

> "*** Although no wrong has yet been committed, such is not necessary to obtain declaratory relief. The mere existence of a claim, assertion or challenge to plaintiff's legal interests, in which the ripening seeds of litigation may be seen and which cast doubt, insecurity, and uncertainty upon plaintiff's rights or status, damages plaintiff's pecuniary or material interests and

establishes a condition of justiciability." *Roberts v. Roberts* (1967), 90 Ill. App. 2d 184, 187, 234 N.E.2d 372; see also *Northwestern University v. State of Illinois* (1977), 56 Ill. App. 3d 305, 371 N.E.2d 1046.

We believe that an actual controversy exists in the case before us. There is nothing hypothetical or abstract about this dispute. Rather, a very genuine and actual controversy was created when Dayan filed a lawsuit in France against McDonald's French company seeking a declaration that the percentage fee payments made to McDonald's are usurious and in violation of French law, and that McDonald's be ordered to return to Dayan more than six million francs. Although Dayan asserts that McDonald's petition is premature until the French courts rule on his lawsuit, such an assertion is without merit in light of the above-quoted authorities. It is not the conclusion, but rather the commencement, of French proceedings which engendered the actual controversy required under section 2—701. Accordingly, we affirm the trial court's denial of Dayan's motion to dismiss on the ground of prematurity.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

*Affirmed.*

LORENZ and O'CONNOR, JJ., concur.