**METRO COMMUNICATIONS COMPANY and Royal Radio Sales and Service, Inc., Plaintiffs–Appellants,**

v.

**AMERITECH MOBILE COMMUNICATIONS, INC., Defendant–Appellee.**

No. 92–1356.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 12, 1992.

Decided Jan. 27, 1993.

■■■■■■■■■■■■■■■■■■■■■

Jerome D. Frank (argued and briefed), Lawrence C. Atorthy (briefed), Seyburn, Kahn, Ginn, Bess & Howard, Southfield, MI, for plaintiffs-appellants.

Lawrence Campbell, Kenneth J. McIntyre (argued and briefed), Robert W. Powell, John C. O'Meara, Brian K. Zahra, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, for defendant-appellee.

Before BOGGS and SILER, Circuit Judges, and LAMBROS, Chief District Judge.*

BOGGS, Circuit Judge.

The plaintiffs, retail marketers of cellular telephone services, sued the defendant, a provider of cellular telephone services and equipment, for breach of an agency contract. The district court granted the defendant's motion for summary judgment and held that the defendant's right to contract with competitors of the plaintiffs is not limited by an implied covenant of good faith in its contracts with the plaintiffs; that the contracts were not modified by extracontractual written representations; and that the plaintiffs had failed to satisfy the elements of their price discrimination claim pursuant to the Robinson–Patman Act, 15 U.S.C. § 13(a), (d), & (e). We affirm.

I

The plaintiffs, Metro Communications Company ("Metro") and Royal Radio Sales and Service, Inc. ("Royal"), are Michigan corporations engaged in retail marketing of cellular telephone services in the Detroit area. Each is a one-store operation, and each entered into an agency contract with Ameritech Mobile Communications, Inc. ("Ameritech"), a provider of cellular telephone services and equipment. Metro entered into a three-year agency contract with Ameritech on April 1, 1985, which was succeeded by a five-year contract on November 1, 1988. Royal entered into a contract on November 30, 1987, and the current contract on January 1, 1990. Although Royal and Metro were the first entities in the Detroit area with whom Ameritech contracted, Ameritech now has agency agreements with additional agents and retailers of cellular telephone services and equipment. All parties distinguish between agents, or small dealers, and retailers, or large, multi-location dealers.

Royal and Metro also entered into equipment contracts with Ameritech, under which they were required to purchase a minimum number of cellular telephones per year in order to obtain favorable distributor prices. The equipment agreements required the plaintiffs to maintain the same kind of facility, sales force, and solicitation of Ameritech equipment as they were required to provide under the agency agreements.

On June 7, 1985, Ameritech entered into an agency contract with Metrocell, a cellular telephone company. In April 1987, Ameritech entered into an agency contract with Celluland of Michigan, a franchisee of a California-based franchisor. In 1990, a subsidiary of Ameritech purchased Celluland. Celluland currently operates under the name CarFone Communications, Inc.

In late 1987 and 1988, Ameritech began expanding its operation in the Detroit area. It enlisted multi-location, high-volume retailers such as ABC Appliance, Fretter, and Highland Superstores to sell Ameritech cellular service.

The core of the plaintiffs' complaint is "that Ameritech entered into substantially more favorable contracts with Metrocell, another 5 Star Dealer [Ameritech's top

---

* The Honorable Thomas D. Lambros, Chief United States District Judge for the Northern District of Ohio, sitting by designation.

agent category], and with so-called 'authorized retailers,' discount chains ABC Warehouse, Fretter and Highland Appliance, in breach of its duty of good faith and fair dealing." The plaintiffs assert three separate claims: 1) that Ameritech breached an implied covenant of good faith and fair dealing by entering into agreements with other agents and retailers that were extremely unfavorable to the plaintiffs;[1] 2) that Ameritech modified the agency contract with Metro by agreeing that it would treat Metro "substantially equally with its other agents;" and 3) that Ameritech discriminated in favor of competing agents in the commissions paid for sales of cellular telephone service in violation of Section 2(a), (d), & (e) of the Robinson–Patman Act, 15 U.S.C. § 13(a), (d), & (e).[2]

After first denying Ameritech's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court granted Ameritech's motion for summary judgment and dismissed the complaint. The district court held that all of the plaintiffs' claims that were grounded in alleged price discrimination in favor of competing agents were barred by the two-year contractual statute of limitations because the principals of both Royal and Metro admitted under oath that they had sufficient knowledge of the alleged discrimination more than two years before the complaint was filed. Second, the court ruled that Ameritech did not breach an implied covenant of good faith because Ameritech's unrestricted competition with the plaintiffs through other retailers and agents was permitted by the clear language of the contract. Third, the court ruled that alleged oral and extracontractual written representations did not modify the contract because they represented an impermissible limitation on the right-to-compete clause through terms inconsistent with the expressed language, rather than a permissible addition to the contract with consistent terms. Finally, the court determined that plaintiffs failed to satisfy the requirements of a Robinson–Patman claim.

## II

We review *de novo* the district court's grant of Ameritech's motion for summary judgment. *Baggs v. Eagle–Picher Industries, Inc.*, 957 F.2d 268, 271 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 466, 121 L.Ed.2d 374 (1992). We may affirm the district court only if we determine that the pleadings, affidavits, and other submissions show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only "show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The pivotal question before us is whether

---

**1.** The plaintiffs claim that Ameritech discriminated among the agents by paying different commissions on the sale of cellular telephone service; and that Ameritech provided retailers with more favorable contracts that did not require the retailers to perform certain obligations required of agents, that provided more favorable commissions, and that allowed retailers to sell the cellular telephone service far below cost.

**2.** The plaintiffs also claimed that Ameritech unreasonably interfered with the plaintiffs' performance of their duties as agents by discriminating against them in the manner described in the first claim.

We agree with the district court's characterization of this claim as a restatement of the "implied good faith" claim. As the district court explained:

This claim asserts that the principal-agent relationship between [Ameritech] and Plaintiffs obligated [Ameritech] to refrain from discriminating against Plaintiffs. However, any duty of a principal towards his agent based on a contractual relationship must be contained, expressly or impliedly, by [sic] the contract establishing the agency.... Therefore, the Court must examine the agency contracts to determine whether [Ameritech] owed Plaintiffs the duty to compete with them on substantially equal terms. As the express language of the agency contracts do not establish such a duty, the Court must examine whether the implied terms of the contracts create this duty.

*Metro Communications Co. v. Ameritech Mobile Communications, Inc.*, 788 F.Supp. 1424, 1427 n. 8 (E.D.Mich.1992).

the parties bearing the burden of proof—the plaintiffs—have presented a jury question as to each element of their case. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552. The plaintiffs must present more than a mere scintilla of evidence in support of their position; the plaintiffs must present evidence "on which the jury could reasonably find for the plaintiff[s]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### III

■ The plaintiffs concede that their contracts contain no express statements that Ameritech must treat each of its agents in a substantially equal manner. Instead, the plaintiffs argue that the implied covenant of good faith and fair dealing limits Ameritech's freedom to establish significantly more favorable contractual terms with competing agents.

■ Under Illinois law,[3] an implied covenant of good faith is part of every contract and limits the amount of discretion enjoyed by each party to the contract. *Dayan v. McDonald's Corp.*, 125 Ill.App.3d 972, 990, 81 Ill.Dec. 156, 170, 466 N.E.2d 958, 972 (1984), *later proceeding*, 138 Ill.App.3d 367, 485 N.E.2d 1188 (1985). Specifically, "a party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." 125 Ill.App.3d at 991, 81 Ill.Dec. at 170, 466 N.E.2d at 972.

In this case, the agency contracts grant Ameritech the discretion to compete with the plaintiffs. The relevant provision states:

> During the term of this Agreement, or thereafter, Ameritech Mobile reserves the right, without obligation or liability to Agent, to market CRS [cellular radio service] in the same area served by Agent, whether through Ameritech Mobile's own employees or through others, including other Agents and Resellers.

Therefore, the specific issue before us is whether, in light of this language, Ameritech had the right to negotiate substantially more favorable contract terms with the plaintiffs' competitors. The language of the contract places no restrictions on Ameritech's right to compete with the plaintiffs. Moreover, the plaintiffs admitted in depositions that they understood when they entered the contracts that Ameritech had a right to compete with the plaintiffs and to attempt to undersell them.

■ In essence, the plaintiffs are arguing that although Ameritech has a right to compete, that right has limits and should not be so broad that it makes their contracts so uncompetitive that they are useless. But the implied covenant of good faith is a construction aid that helps a court determine the intent of the parties; it cannot be used to add terms to the contract when there is no evidence that the parties intended that those terms be included. *Anderson v. Burton Associates, Ltd.*, 218 Ill.App.3d 261, 266, 161 Ill.Dec. 72, 76, 578 N.E.2d 199, 203 (1991). In this case, Ameritech's right to compete is unrestricted. As the district court stated, "Plaintiffs are attempting to read an implied restricted competition clause into an express right to compete clause." *Metro Communications*, 788 F.Supp. at 1432.

This case is similar to *Patel v. Dunkin' Donuts of America, Inc.*, 146 Ill.App.3d 233, 100 Ill.Dec. 94, 496 N.E.2d 1159 (1986). There, the plaintiff and the defendant entered into a franchise agreement providing the plaintiff with a donut shop. The agreement included a provision that reserved to the defendant the right to franchise other donuts shops at its discretion:

> DUNKIN' DONUTS, in its sole discretion, has the right to operate or franchise other DUNKIN' DONUTS SHOPS under, and to grant other licenses in, and to, any or all of the PROPRIETARY MARKS, in each case on such terms and conditions as DUNKIN' DONUTS deems acceptable.

146 Ill.App.3d at 234, 100 Ill.Dec. at 94, 496 N.E.2d at 1159. The defendant then fran-

---

**3.** The contracts provide that Illinois law is con-   trolling.

chised another shop within a mile of the plaintiff's shop. The plaintiff conceded that the contract had no exclusive territory provision, but argued that the covenant of good faith prohibited the defendant from franchising another shop in a location so close to the plaintiff's that it "den[ied] plaintiffs the fruits of their franchise agreement" and "would result in injury to plaintiffs' business and future profits." 146 Ill.App.3d at 236, 100 Ill.Dec. at 95, 496 N.E.2d at 1160. The Illinois Appellate Court rejected this argument:

> Plaintiffs' ... franchise agreement contains no geographical or time restraints regarding the establishment of another Dunkin' Donuts franchise. In fact, the agreement expressly grants one location to Plaintiffs and reserves, without restriction, defendants' right to operate or franchise other shops on such terms as defendants deem appropriate. Rather than giving any proprietary rights in other locations, the agreement rejects such rights. Rather than restricting defendants' establishment of Dunkin' Donuts shops within defined geographical and chronological limits, the agreement authorizes defendants' unrestricted competition.

146 Ill.App.3d at 237, 100 Ill.Dec. at 96, 496 N.E.2d at 1161.

The plaintiffs argue that this case is distinguishable because the defendant in *Patel* was only exercising its discretion to compete on an equal playing field. In contrast, the plaintiffs allege that Ameritech's method of competing prevents the plaintiffs from competing on equal footing and "renders meaningful competition impossible." We are not persuaded by this argument. First, the plaintiffs are asking this court to read into the contract an implied restriction on competition that limits Ameritech's discretion on all matters except the mere fact of competition. There is no evidence that the parties intended to include any restriction, much less such a finely tailored restriction. In fact, this case is indistinguishable from *Patel;* in both cases the contracts expressly authorized unrestricted competition. Second, the plaintiffs' competitors were able to get more

favorable terms because they had more bargaining power. 'The "meaningful competition" between the plaintiffs and their competitors began at the contract stage. The competitors had more to offer and were able to get more favorable terms.

## IV

■ Metro (but not Royal) alleges that its contract was modified by correspondence between the parties to include an express provision that Metro would have the same contractual terms as other agents. In the proceedings below, Metro also argued that two letters written before the November 1, 1988 contract also modified the contract. Whatever express promises might have been made in those letters were superseded by the new contract, pursuant to that contract's integration clause. *Continental Mobile Telephone Co. v. Chicago SMSA Limited Partnership*, 225 Ill. App.3d 317, 321, 167 Ill.Dec. 554, 558, 587 N.E.2d 1169, 1173 (1992). Therefore, on appeal, Metro relies exclusively on the following statement in a letter dated February 14, 1989, from Ameritech to Metro:

> it is Ameritech Mobile's policy to treat all of its agents in a fair and substantially similar fashion. I, therefore, must disagree with your assertions of duress against you or unequal treatment among agents. Ameritech Mobile hopes that we can work together to achieve our mutual goals in the Detroit market area.

■ Under Illinois law, contract modifications are governed by the same rules as other contracts and require the same prerequisites: offer, acceptance, and consideration. *Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 776 F.2d 198, 208 (7th Cir.1985). Both parties must express their mutual assent to the same terms. *MAJS Investment v. Albany State Bank & Trust Co.*, 175 Ill.App.3d 478, 124 Ill.Dec. 918, 529 N.E.2d 1035 (1988), and the assent must be supported by consideration. *Terminal Freezers, Inc. v. Roberts Frozen Foods, Inc.*, 41 Ill.App.3d 981, 988, 354 N.E.2d 904, 910 (1976). We agree with the district court that the letter quoted

above, standing alone, is not sufficient. The letter provides no evidence of mutual assent to the same terms or consideration for any alleged promises. To the contrary, the letter appears to be part of an ongoing dispute between the parties and an early manifestation of the disagreement over Ameritech's obligations to the plaintiffs that prompted this lawsuit.

## V

■ Finally, the plaintiffs allege that Ameritech violated Section 2(a), (d), & (e) of the Robinson–Patman Act, 15 U.S.C. § 13(a), (d), & (e). Under these sections of the Act, it is unlawful for any person engaged in commerce to discriminate in price between different purchasers of commodities of like grade and quality. The Act applies only to the sale of goods or commodities, not services. The plaintiffs argue that the Act is applicable to the contracts with Ameritech because the transaction between the plaintiffs and Ameritech is a transaction involving a sale of tangible goods (cellular telephone equipment) and the provision of a service (cellular telephone activation service).

This court has ruled that the Robinson–Patman Act is applicable to transactions that involve the sale of both goods and services only if the "dominant nature" of the transaction is a sale of goods. *General Shale Products Corp. v. Struck Construction Co.*, 132 F.2d 425 (6th Cir.1942) (construction contract did not include sale of goods even though the contract listed separately the cost of building materials), *cert. denied*, 318 U.S. 780, 63 S.Ct. 857, 87 L.Ed. 1148 (1943).

The "dominant nature" test is not applicable in the present case, however. First, the test is only applicable when the transaction involves both the sale of goods and services. The plaintiffs' allegations of discrimination involve only alleged differences in the commission paid for the marketing of activation service. Although the plaintiffs provided cellular telephone activation service and sold telephones, the transactions involving the supply of activation service were separate from the transactions involving the supply of the telephones. The plaintiffs can sell customers activation service without telephones, and telephones without activation service. The plaintiffs argue that the two are interrelated because the service is useless without the telephone. Yet, the plaintiffs ignore the fact that a customer who buys activation service from the plaintiffs might choose to purchase the telephone equipment from someone else or might already own the telephone equipment.

■ The plaintiffs also argue that the provision of a "cellular telephone service system" is a sale of a commodity. The plaintiffs claim that the telephone service is similar to electricity, which was determined to be a commodity in *City of Kirkwood v. Union Electric Company*, 671 F.2d 1173 (8th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 814, 74 L.Ed.2d 1013 (1983). The City of Kirkwood had exclusive retail electric distribution rights to two-thirds of Kirkwood. The City, however, did not produce electricity itself, but instead bought electricity from Union Electric at wholesale prices and then sold the electricity to its retail customers. Union Electric had exclusive retail electric distribution rights to the remaining one-third of Kirkwood. The City alleged that Union Electric violated the Robinson–Patman Act by increasing the wholesale rate at a faster rate than the retail rate, thus squeezing the City out of the market and making it difficult for the City to attract large industries to its retail area. The court ruled that electricity is a commodity for the purposes of the Robinson–Patman Act: "Electric power can be felt, if not touched. It is produced, sold, stored in small quantities, transmitted, and distributed in discrete quantities." *Id.* at 1181. The cellular telephone service is very different from electricity. It cannot be produced, felt, or stored, even in small quantities. The plaintiffs do not buy a quantity of it, store it, and resell it to their customers. They simply provide customers with access to the service.

■ Even if the cellular telephone service could be characterized as a commodity, the Act still would not apply to the plain-

tiffs' marketing of Ameritech's cellular telephone service because the Act does not apply to transactions that are not sales. *Parrish v. Cox*, 586 F.2d 9, 12 (6th Cir. 1978). The plaintiffs act as intermediaries between Ameritech and its service users; they do not buy the services and then resell them to the customers. *See Seaboard Supply Co. v. Congoleum Corp.*, 770 F.2d 367 (3rd Cir.1985). Therefore, the transactions between the plaintiffs and Ameritech involving cellular telephone service are not sales, and the Act is not applicable.

## VI

Because we hold that the district court properly granted Ameritech's motion for summary judgment on the substantive claims, we need not reach the issue of whether the contractual limitations period precludes any portion of the plaintiffs' claim that alleges price discrimination.

For the foregoing reasons, we AFFIRM the order of the district court.