30 F.3d 130
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In Re: PRESIDENTIAL AIRWAYS, INC., Debtor.
Kermit A. ROSENBERG, Trustee, Plaintiff-Appellant,
v.
UNITED AIRLINES, INC., Defendant-Appellee.
 No. 93-2517.
 United States Court of Appeals, Fourth Circuit.
 Argued June 6, 1994.
Decided July 22, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-93-648-A)
 Leslie A. Lupert, Orans, Elsen & Lupert, New York City, for appellant.
 Henry C. Thumann, O'Melveny & Myers, Washington, DC, for appellee.
 Daniel M. Litt, Dickstein, Shapiro & Morin, Washington, DC, for appellant.
 Richard G. Parker, O'Melveny & Myers, Washington, DC, Harvey B. Cohen, Cohen, Gettings, Dunham & Harrison, ARlington, VA, for appellee.
 E.D.Va.
 AFFIRMED.
 Before MURNAGHAN, WILKINSON, and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Kermit A. Rosenberg, trustee of the bankruptcy estate of Presidential Airways, Inc., brought this action[1] against United Airlines, Inc. (United) for breach of contract and for violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1-1065/9 (West 1993). The district court granted summary judgment in favor of United. It concluded that Presidential had failed to establish a genuine issue of material fact concerning whether United had agreed not to compete with Presidential on feeder routes served by Presidential or had used Presidential's passenger information in determining those routes where it would begin competing. We affirm.
 
 I.
 
 2
 Presidential and United entered into an Expanded Partnership Agreement (EPA)[2] for the purpose of having Presidential provide connecting flights for United at Dulles International Airport. As part of this agreement, United granted Presidential a nonexclusive license to use the United service mark in certain routes served only by Presidential ("nonoverlapping" routes).[3] Presidential operated as a "United Express" feeder airline and transmitted to United passenger data for the purpose of filing tariffs and calculating each carrier's share of the revenue earned. After operating under the EPA for approximately six months, United overhauled its route structure and began competing with Presidential in some of the formerly nonoverlapping routes.
 
 
 3
 With respect to the breach of contract claim, the district court concluded that the EPA could not be read to include a promise by United to refrain from entering the nonoverlapping markets. With respect to the trade secrets claim, the district court held that even if the evidence was sufficient to raise a genuine issue of material fact concerning whether United had used Presidential's passenger information in deciding how to overhaul its route system, the information was used in a way that the EPA permitted.
 
 II.
 
 4
 Presidential argues that the EPA required United to refrain from serving the nonoverlapping routes. In support of this contention, Presidential points to a provision of the EPA that provided, "The scheduled air transportation services to be operated by[Presidential in the nonoverlapping markets] will be maintained throughout the term of this Agreement." Presidential contends that this provision required United, as well as Presidential, to "maintain" Presidential's level of service in the nonoverlapping markets and therefore implicitly prohibited United from competing in those markets. Reading the contract as a whole, we conclude that the EPA is unambiguous and that it imposed no duty on United to refrain from competing in nonoverlapping markets. The EPA merely granted Presidential a license to use the United service mark on nonoverlapping routes on the condition that Presidential maintain a certain level of service. See Rakowski v. Lucente, 472 N.E.2d 791, 794 (Ill.1984) (When a contract is unambiguous, "a court must enforce the agreement as written.").
 
 
 5
 Presidential's related claim--that by competing in the nonoverlapping markets United breached its implied duty to perform the EPA in good faith--must similarly fail. Under Illinois law, the implied duty of good faith and fair dealing cannot be used to imply a term that is not already a part of the contract. Metro Communications Co. v. Ameritech Mobile Communications, Inc., 984 F.2d 739, 743 (6th Cir.1993) (applying Illinois law). As we have concluded, the EPA did not require United to refrain from serving the nonoverlapping routes. Therefore, United did not breach its duty of good faith.
 
 III.
 
 6
 Finally, we believe that the district court properly granted summary judgment on Presidential's claim that United used passenger information furnished by Presidential in violation of the Illinois Trade Secrets Act. Presidential presented no direct evidence that United actually used the passenger information. Instead, Presidential asserts that because the passenger information was available to United, it can be inferred that United used the information to decide which markets it would enter. However, it is undisputed that United did not merely add these markets to its existing routes; rather, United extensively overhauled its route structure. It is also undisputed that the passenger information furnished by Presidential would have been of limited usefulness to United in this restructuring because much broader information was required to make this type of adjustment. Moreover, United presented evidence that it obtained the information necessary to undertake the restructuring from the United States Department of Transportation and, further, that it did not rely on the information provided by Presidential. Viewed in the light most favorable to Presidential, we cannot conclude that the evidence is sufficient to raise a genuine issue of material fact concerning whether United improperly used Presidential's confidential passenger information. Thus, United is entitled to judgment as a matter of law on Presidential's trade secrets claim.
 
 IV.
 
 7
 Because Presidential failed to raise a genuine issue of material fact on its breach of contract and trade secrets claims, we affirm the grant of summary judgment to United.
 
 
 8
 AFFIRMED.
 
 
 
 [1]
 For ease of reference, we refer hereafter to this action as having been prosecuted by Presidential Airways, Inc. (Presidential)
 
 
 [2]
 The EPA is governed by Illinois law
 
 
 [3]
 Presidential also received the right to use the United service mark in routes already served by both air carriers ("overlapping" routes)