**DIAMOND TRIUMPH AUTO GLASS, INC., Plaintiff**

v.

**SAFELITE GLASS CORPORATION, Defendant**

**No. 3:02 CV 514.**

United States District Court, M.D. Pennsylvania.

Nov. 12, 2004.

Charles J. Lloyd, Kristin Loedrup Choi, Matthew P. Lewis, Livgard & Rabuse, P.L.L.P., Minneapolis, MN, Richard S. Bishop, Hourigan, Kluger & Quinn, P.C., Scranton, PA, James T. Shoemaker, Hourigan, Kluger & Quinn, P.C., Kingston, PA, for Plaintiff.

Adam W. Wiers, Amy E. Dias, Ana Maria Mieles, Dana Baiocco, Donald M. Lund, Erik C. Naft, Jason A. Spak, Laura E. Ellsworh, Margaret A. Hoehl, Molly K. Dempsey, Jones Day Reavis & Pogue, Pittsburgh, PA, Charles A. Shea, III, Wetzel, Caverly, Shea, Phillips And Rodgers, Wilkes-Barre, PA, Brian T. Guthrie, Philadelphia, PA, Cody H. Brooks, Kreder, Brooks, Hailstone & Ludwig, Scranton, PA, for Defendants.

## MEMORANDUM

MUNLEY, District Judge.

Presently before the court for disposition is Plaintiff Diamond Triumph Auto Glass, Inc.'s ("Diamond") motion to dismiss (Doc. 242) Defendant Safelite Glass Corporation's ("Safelite") counterclaims II–VII for failure to state a claim upon which relief may be granted. The matter has been fully briefed and is ripe for disposition. For the following reasons, we will deny the motion in part and grant it in part.

**Background** [1]

Both Diamond and Safelite are engaged in the business of repairing and replacing automobile glass. Safelite, in addition, manages the automobile glass replacement programs for numerous insurance companies throughout the country. In conjunction with its handling of the insurance companies' automobile glass replacement programs, Safelite operates one or more telephone call centers to process calls from insured individuals in need of automobile glass repair or replacement. Upon receiving a request at its call center from an insured seeking a repair or replacement job, Safelite refers that job to an automobile glass repair facility. To facilitate its referral of automobile glass repair and replacement jobs, Safelite contracts with a network of shops that provide glass repair and replacement services. Accordingly, after receiving a job request through its call center, sometimes Safelite will refer the work to a Safelite facility, and sometimes the work will be scheduled at another network shop.

In April 2000, Diamond signed a contract with Safelite, called the "Network Participation Agreement," under which Diamond received, prior to termination of the Agreement, some of these automobile glass referrals from the Safelite call center. On March 29, 2002, Diamond filed a complaint initiating the case *sub judice,* alleging that Safelite breached the Network Participation Agreement, violated a duty of good faith and fair dealing, engaged in deceptive trade practices, and interfered with prospective contractual relationships. Diamond filed a second amended complaint on February 18, 2004.

In response, Safelite filed an answer with seven counterclaims on March 8, 2004. These counterclaims arise from two allegedly improper business practices by Diamond. First, in response to Safelite's breach of the network agreement, Diamond allegedly sent letters to the insurance companies, whose glass replacement programs are run by Safelite, maintaining

---

1. The following facts are derived from Safelite's counterclaims (Doc. 206).

that Safelite stole auto-glass replacement jobs from Diamond. Second, Diamond allegedly provided "push payments" to insurance agents and individuals working with and for insurance companies. These push payments consisted of financial rewards, such as gift certificates or free gasoline cards, provided to insurance agents in exchange for their agreement to refer insured individuals in need of glass replacement to Diamond.

In Counterclaim I, Safelite alleges that Diamond's letters to Safelite's insurance clients were defamatory. Counterclaim II alleges that the letters constituted false advertising under the Lanham Act, 15 U.S.C. § 1125(a). Counterclaim III alleges that Diamond's push payments constitute commercial bribery under the Robinson–Patman Act, section 3(c), 15 U.S.C. § 13(c). Counterclaim IV avers that Diamond intentionally interfered with Safelite's business relationships by providing the push payments. Counterclaim V maintains that common law unfair competition prohibits Diamond's push payments. Counterclaim VI alleges that the push payments violated various state statutes proscribing deceptive trade practices and commercial bribery. Finally, Counterclaim VII avers that Diamond breached the Network Agreement by making push payments because the Agreement specifically required Diamond to comply with all laws and regulations applicable to its business. On May 6, 2004, Diamond filed the instant motion to dismiss bringing this case to its present posture.

### Jurisdiction

The Court exercises jurisdiction over this dispute pursuant to its federal question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367. Pennsylvania law applies to those claims considered pursuant to supplemental jurisdiction. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct.

1130, 16 L.Ed.2d 218 (1966) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

### Standard

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested. The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997).

### Discussion

Diamond seeks to dismiss Counterclaims II–VII. We will consider each count *in seriatim.*

### A) Count II: Lanham Act Claim

■ Safelite alleges that Diamond engaged in false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by sending letters to insurance companies that participate in Safelite's claims-management business. In these letters, Diamond accused Safelite of improperly steering customers in what amounted to theft of customers. Diamond asserts that we should dismiss this claim because these letters do not constitute advertising under the meaning of the Lanham Act.

■ An entity engages in false advertising if it "uses … any false or misleading description of fact, or false or misleading representation of fact, which (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities …." 15 U.S.C. § 1125(a)(1)(B). The application of this section is "limited to false advertising as

that term is generally understood." *Gordon & Breach Science Publishers S.A. v. Am. Inst. of Physics*, 859 F.Supp. 1521, 1532 (S.D.N.Y.1994) (internal citations omitted). The section, however, does apply to statements made outside the "classic advertising campaign." *Id.* at 1535–36. Therefore, courts have developed the following four part test to determine whether a statement or representation is commercial advertising. The statement must be: "(1) commercial speech; (2) [made] by a defendant in commercial competition with the plaintiff; (3) designed to influence customers to buy the defendant's products; and (4) . . . sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry." *Schmidt, Long, and Assoc. v. Aetna U.S. Healthcare, Inc.*, No.CIV.A.00–3683, 2001 WL 856946, at * 10 (E.D.Pa. July 26, 2001) (citing *Gordon*, 859 F.Supp. at 1536).

■ Diamond argues that, taking all of Safelite's allegations as true, the letters are not advertising because they were not designed to influence the insurance agencies to buy Diamond products. Diamond reasons that it does not offer a service to insurance companies, but instead offers a glass replacement service to insureds.[2] Diamond notes that Safelite's pleading states that Diamond's purpose in sending the letters was to "request that Safelite's Insurance Clients contact Safelite and require that Safelite expend time and money to make internal changes that will allegedly benefit Diamond." Counterclaim ¶ 11.

Taking all of Safelite's allegations as true, we cannot say that the letters were not designed to influence customers to purchase Diamond's products or services. Diamond's characterization its business

and clientele is irrelevant; the relevant consideration is Safelite's allegations. Safelite states,

> Diamond has published material to Safelite's Insurance Clients, and upon information and belief, to others in the auto glass repair and replacement industry, accusing Safelite of illegal and aggressive steering tactics and outright theft of jobs targeted for Diamond, and is using these false accusations to promote its own services, soliciting commercial relationships between Diamond and Safelite's Insurance Clients and prospective insurance clients.

Counterclaim ¶ 50.

■ Here, Safelite has averred that the letters were designed to solicit commercial relationships between Diamond and Safelite's insurance clients as well as perspective clients. Additionally, Safelite maintains that Diamond sent letters not only to insurance clients, but also to *others in the industry*. *Id.* If Safelite can show that "others in the industry" include insured individuals who use Diamond's automobile glass services, then the letters may have been designed to influence customers. When a Lanham Act false advertising claimant alleges that the defendants made false claims in letters, a court cannot determine the designed impact of the letters without first determining who the intended recipients were. *See Symantec Corp. v. CD Micro, Inc.*, No.CIV.A.02–406–KI, 2003 WL 23539587, at *3 (D.Or. Feb. 3, 2003) (declining to dismiss Lanham Act false advertising claims on the pleadings because the plaintiff alleged that the defendant sent letters to "various entities" and plaintiff is not required to plead a complete list of the recipients).

---

**2.** Diamond also argues that the accusations in the letters do not misrepresents the nature, characteristics, qualities, or geographic origin of Safelite's goods or services. Diamond has provided no authority for such a restrictive

reading of this language, and we find that the plain meaning of this language proscribes false accusations of dishonesty in business dealings. Therefore, we find that this argument lacks merit.

Additionally, taking all of Safelite's allegations as true, we cannot say that Safelite will not be able to prove that the insurance companies are customers of Diamond's services and products. Safelite alleges that "Diamond competes directly with Safelite in the business of auto glass sales, repair and replacement and *related services* throughout the United States." Counterclaim ¶ 7 (emphasis added). The insurance companies may be customers of Diamond's "related services" because Safelite alleges that the call center program is a service related to the business of auto glass replacements. *See* Counterclaim ¶¶ 3–5. Thus, if Safelite can prove that Diamond engages in a related service for insurance companies, such as a call center, Safelite may be able to demonstrate that Diamond designed the letters to influence customers to purchase its products or services. Therefore, we will deny Diamond's motion to dismiss this counterclaim.

## B) Count III: Robinson–Patman Act Claim

■■■ In Counterclaim III, Safelite alleges that Diamond's push payments amount to commercial bribery under the Section 3(c) of the Robinson–Patman Act, 15 U.S.C. § 13(c). This section applies only to bribes where the "dominant nature" of the underlying transaction constitutes a sale of goods rather than a contract for services. *Tri–State Broad. Co. v. United Press Int'l, Inc.*, 369 F.2d 268 (5th Cir.1966); *see also Kennedy Theater Ticket Serv. v. Ticketron*, 342 F.Supp. 922, 927 (E.D.Pa.1972) (dismissing a Robinson–Patman commercial bribery claim because the dominant nature of ticket sales is a contract for services) (citing *Tri–State Broad.*, 369 F.2d at 270).[3]

Diamond argues that the dominant nature of automobile glass installation is a contract for services. We find it premature to make this determination on the pleadings.

The dominant nature test requires an analysis of a variety of factors. *See May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1214–16 (9th Cir.1980) (weighing factors such as the input costs of the tangible goods and intangible services, the supplies involved, and the breakdown of the costs in billing the customer). In some cases, the dominant nature of a transaction may be apparent from the pleadings, and thus the case may be disposed of on a motion to dismiss. *See, e.g., Freeman v. Chicago Title & Trust Co.*, 505 F.2d 527, 530–31 (7th Cir.1974) (finding title insur-

---

**3.** Although the Third Circuit has never expressly adopted the dominant nature test as a means for determining the applicability of the Robinson–Patman Act to hybrid goods and services transactions, every circuit that has considered the issue has used the test. *See Innomed Labs, LLC v. Alza Corp.*, 368 F.3d 148, 158–59 (2d Cir.2004) (noting that the dominant nature test determines whether the Robinson–Patman Act applies to a contract where the intangible and tangible elements are fused but did not apply to a contract selling a commodity with the appended right to exclusive distribution); *Metro Communications Co. v. Ameritech Mobile Communications, Inc.*, 984 F.2d 739, 745 (6th Cir.1993) (specifying that the dominant nature test applies when a transaction involves both the sale of goods and services, and not when the two are provided by the same business but in distinct transactions); *Union City Barge Line., Inc. v. Union Carbide Corp.*, 823 F.2d 129, 141 (5th Cir.1987) (finding that storage and delivery of fuel was predominately a service); *May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1215–16 (9th Cir.1980) (finding that a material issue of fact existed as to the dominant nature of a transaction wherein the defendant graphic company reformatted the plaintiff's photograph to make it suitable for reproduction in a newspaper); *Freeman v. Chicago Title & Trust Co.*, 505 F.2d 527, 530–31 (7th Cir.1974) (using the dominant nature test to find that the sale of title insurance is a contract for services and therefore the Robinson–Patman Act did not apply).

ance to be intangible because the paper on which the contract is written is incidental to the services that the paper represents). However, in cases where the nature of the transaction is not apparent from the pleadings, it is inappropriate to dispose of the case without analyzing a developed record. In *May*, the court denied summary judgment because a material issue of genuine fact existed as to whether services or goods dominated the nature of the underlying transaction. 637 F.2d at 1214–16. In the transaction in question, the defendant received the plaintiff's artwork and transformed it into a "velox," which is series of dots which is easily reproduced as artwork in a newspaper. *Id.* at 1213. The court found the defendant had "not produced any comparison between the cost of the physical components of a velox and the price charged to [plaintiff]. There is no evidence in the record that [defendant] billed [plaintiff] separately for its labor." *Id.* at 1216. Without an analysis, or even a detailed description, of the transactions in question we cannot weigh the factors which determine the dominant nature of the transactions.

Additionally, the dominant nature test may not apply in this case because the test is useful only when tangible and intangible elements are fused in the same transaction. *Metro Communications v. Ameritech Mobile Communications*, 984 F.2d 739, 745 (6th Cir.1993). In *Metro*, the plaintiff alleged that the defendant violated the Robinson–Patman Act in its marketing of cellular phone activation services. *Id.* at 45. The court found that although the defendant provided activation services and sold phones, they conducted the two trans-

actions separately. *Id.* The dominant nature test, therefore, did not apply because the activation service was the transaction involved, and there was no question that the sale of phones was not fused into the sale of the activation service. *Id.; see also Innomed Labs v. Alza Corp.*, 368 F.3d 148, 158–60 (2d Cir.2004) (finding the dominant nature test inapplicable to the sale of a commodity with the appended right to exclusive distribution because the tangible and intangible elements were separable).

An analysis of Safelite's pleadings manifests that Safelite has pled facts which could support a claim under the Robinson–Patman Act. Here, Safelite alleges that the push payments were made in the context of "glass-job" transactions, Counterclaim ¶ 58, and that Diamond is in the business of "auto glass sales, repair and replacement and related services." Counterclaim ¶ 7. Safelite may be able to produce evidence that Diamond provided the push payments in exchange for the insurance agents' agreement to refer customers to Diamond's glass sales service. In the absence of a developed record, we cannot determine whether the push payments were made in exchange for "glass jobs" that involved the sale of glass, the replacement of glass, or some combination thereof. As we are limited to an analysis of the pleadings, we cannot determine "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Therefore, we find dismissal premature at this juncture and we will deny Diamond's motion to dismiss Safelite's Robinson–Patman Act claim.[4]

---

4. Diamond relies on *General Glass Co. v. Globe Glass and Trim Co.*, No.CIV.A.71–921, 1978 WL 1396, at * 1 (N.D.Ill. Sept.13, 1978) to argue that the installation of glass is predominately a contract for services. *General Glass*, 1978 WL 1396, however, is merely a reconsideration of a previous order, *General*

*Glass Co. v. Globe Glass and Trim Co.*, No. CIV.A.71–921, 1978 WL 1331, at *1 (N.D.Ill. Apr.25, 1978), which is readily distinguishable from this case. There, the court found that the transactions involved were service contracts because "[n]ot only are interstate sales in the April–June 1969 period not of

### C) Count VI: State Commercial Bribery Claims [5]

In Count VI, Safelite claims that Diamond violated the commercial bribery statutes of South Carolina, North Carolina, West Virginia, and Illinois by making push payments to its agents. Diamond now seeks to dismiss each of these claims for failure to plead facts sufficient to state a claim. It argues that Safelite has failed to make a "short and plain statement of the claim showing that the pleader is entitled to relief" as required by Federal Rule of Civil Procedure 8 ("Rule 8") because its pleading avers that the push payments give rise to a cause of action "if made in [these states]." Counterclaim ¶ 86–87. Diamond argues that such hypothetical pleading does not satisfy Rule 8. It further argues that hypothetical pleading defeats the purpose of Rule 11, which requires that "the allegations and factual contentions [in a pleading] have factual support," FED. R. CIV. P. 11, and that given the factual background, Safelite is not justified in pleading hypothetically.

■■■ Rule 8 specifically allows a party to plead hypothetically, stating, "[a] party may set forth two or more statements of a claim or defense alternately or hypothetically." FED. R. CIV. P. 8(e)(2). "Generally, an alternative claim is of the form 'either-or,' while a hypothetical claim is of the form of 'if-then.' " *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 802 n. 21 (3d Cir.1992) (citing WRIGHT & MILLER, 5 FEDERAL PRACTICE AND PROCEDURE § 2182, at 525 (West 2d ed.1990)). While Rule 11 does require that a party make a good faith effort to determine the facts before pleading hypothetically, it does not preclude hypothetical pleading.

> A party therefore should not set forth inconsistent, or alternative, or hypothetical statements in the pleadings unless, after a reasonable inquiry, the pleader legitimately is in doubt about the factual background or legal theories supporting the claims or defenses or is otherwise justified in pleading in this fashion and the pleader can represent that he is not doing so for an improper purpose.

WRIGHT & MILLER, 5 FEDERAL PRACTICE AND PROCEDURE § 2185 (3d. ed. West 2004). Therefore, a pleading is not defective simply because it states a claim hypothetically, and we will deny Diamond's motion to dismiss on this ground.[6]

Additionally, Diamond argues that Safelite's South Carolina, North Carolina, West Virginia, and Illinois claims all fail to state a cause of action. We will consider each argument *in seriatim.*

#### 1) South Carolina

■■■ Diamond argues that we should dismiss Safelite's South Carolina commercial bribery claim because the relevant statute, South Carolina Code Annotated § 39–5–170(3) (2003), came into effect on April 22, 2002 and Safelite has not specifically alleged that any push payments took place after this date. Further, the failure is material because this lawsuit was com-

---

record, but any such sales made without that time period appear to indeed be *de minimis."* *General Glass*, 1978 WL 1331, at *6. In the instant case, we have no record to review to determine whether sales or replacement predominate the transactions.

5. We will consider Diamond's arguments pertaining to Counterclaims IV and V along with our consideration of Count VII.

6. We will not engage in an analysis of whether Safelite conducted a sufficient investigation before pleading hypothetically. If Diamond seeks to allege that Safelite has violated Rule 11, it must do so in a separate motion. *See* FED. R. CIV. P. RULE 11(a)(1)(A) ("A motion for sanctions under this rule shall be made separately from other motions or requests. . . .").

menced in March 2002, before the effective date of the statute.

The date of the original pleading is irrelevant because Safelite's counterclaims were filed in a supplemental pleading in March of 2004 in response to Diamond's supplemental complaint. A supplemental pleading may "set[ ] forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." FED. R. CIV. P. 15(d). In its supplemental pleading, Safelite alleges that Diamond continued to make push payments after the effective date of the statute. Counterclaim ¶ 12–28. Therefore, we will deny Diamond's motion to dismiss Safelite's South Carolina claim because Safelite's pleading provides sufficient notice to Diamond as required by Rule 8.

**2) North Carolina and West Virginia**

■ Diamond argues that the North Carolina and West Virginia commercial bribery statutes, North Carolina General Statute § 14–353 and West Virginia § 47–11A–3, include elements that Safelite did not plead. Specifically, North Carolina General Statute § 14–353 requires that the defendant provide payments with an intent to influence the recipient and that the payment be made "under an agreement or an understanding that he shall act in any particular manner in relation to his principal's, employer's, or master's business." N.C. GEN. STAT. § 14–353 (West 2004). West Virginia Code § 47–11A–3 requires that payments be made in secret and that the payments are not available to all like purchasers. W. VA. CODE § 47–11A–3 (West 2004).

■ A pleading need not set forth every element of a cause of action. *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124–25 (3d Cir.1998). "A complaint will withstand a Fed.R.Civ.P. 12(b)(6) attack if the material facts as alleged, in addition to inferences drawn from those allegations, provide a basis for recovery." *Id.* Safelite's pleading states that Diamond provides financial benefits to insurance agents in exchange for the agent's agreement to recommend that insured individuals use Diamond for glass repair or replacement. Counterclaim ¶ 12–28. It further asserts that Diamond specifically contacts agents to induce them to enter into these agreements, and that the insureds are not aware of these transactions. Counterclaim ¶ 19, 22. We find that these allegations provide sufficient notice of the basis of the recovery which Safelite seeks, and therefore we will deny Diamond's motion to dismiss Safelite's claims under North Carolina General Statute § 14–353 and West Virginia Code § 47–11A–3.

**3) Illinois**

■ Diamond alleges that the Illinois statute under which Safelite seeks to hold them liable, 720 Illinois Compiled Statutes § 5/29A–1–2, does not provide a private cause of action, and instead is a criminal statute. We agree. Under, 720 Illinois Compiled Statutes § 5/29A–1–2, a part of the Illinois Criminal Code, "[a] person commits commercial bribery when he confers, or offers, or agrees to confer, any benefit upon any employee, agent or fiduciary without the consent of the latter's employer or principal, with intent to influence his conduct in relation to his employer's or principal's affairs." 720 ILL. COMP. STAT. § 5/29A–1–2 (West 2004). Safelite points to no authority that the Illinois legislature intended this section to provide a private cause of action. Safelite argues that *Williams Electronics Games Inc. v. Garrity*, 366 F.3d 569 (7th Cir.2004) recently recognized a claim for commercial bribery under Illinois law. *Williams* recognizes an Illinois common law commercial bribery claim, but does not hold that 720 ILL. COMP. STAT. § 5/29A–1–2 creates a pri-

vate cause of action. *Id.* at 576–77. Therefore, we will grant Safelite leave to amend its counterclaim to include a commercial bribery claim under Illinois common law, and we will dismiss Safelite's claim under 720 ILL. COMP. STAT. § 5/29A–1–2 because this statute provides no private cause of action.

### D) Count IV, Intentional Interference with Business Relations; Count V, Common Law Unfair Competition; and Count VII, Breach of Contract.

Diamond argues that Safelite's common law claims of intentional interference with business relations, unfair competition, and breach of contract should be dismissed because they are predicated on a violation of the state and federal statutes discussed previously. It argues that since the statutory claims should be dismissed, so should the common law claims that rely upon them. Similarly, Diamond further argues that if we dismiss the Lanham Act and Robinson–Patman Act claims we will not have subject matter jurisdiction over Safelite's state statutory and common law claims. These arguments are both moot because we will not dismiss the Lanham Act claim nor the Robinson–Patman Act claim.[7]

We will dismiss, without prejudice, the portion of Counterclaim VI that is based on 720 Illinois Compiled Statutes § 5/29A–1–2, because this section does not provide a private cause of action. We will deny Diamond's motion to dismiss the remaining counterclaims. An appropriate order follows.

---

7. Diamond also seeks to dismiss Safelite's affirmative defenses. Affirmative defenses are not claims, as such they cannot be dismissed under Federal Rule of Civil Procedure 12(b)(6).

### ORDER

**AND NOW,** to wit, this twelfth day of November 2004, Plaintiff Diamond Triumph Auto Glass Inc.'s ("Diamond") motion to dismiss (Doc. 242) Defendant Safelite Glass Corporation's ("Safelite") counterclaims II–VII (Doc. 206) is hereby **GRANTED** in part and **DENIED** in part. It is hereby **ORDERED** that:

1) Safelite's Counterclaim pursuant to 720 Illinois Compiled Statutes § 5/29A–1,–2 is hereby **DISMISSED**.

2) Diamond's motion to dismiss is **DENIED** as to all remaining counterclaims.

3) Safelite is granted **LEAVE** to amend its complaint to include an Illinois common law commercial bribery claim.

Affirmative defenses are subject to a motion to strike under Rule 12(f). We have, however, already ruled on Diamond's motion to strike Safelite's affirmative defenses, see Doc. 234, and thus this matter is *res judicata*.